UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE FEUTZ,
o.b.o. JMG, a Minor,

       Plaintiff,                                         Hon. Janet T. Neff

v.                                                             Case No. 1:10 CV 54

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of Social Security that Plaintiff is not entitled to Supplemental Security Income under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making his decision, and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was born on December 7, 1998. (Tr. 11). On March 28, 2006, Plaintiff submitted an application for disability benefits, asserting that he has been disabled since October 1, 2004, due to anxiety, depression, and post-traumatic stress. (Tr. 70-73, 78). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 21-24, 52-69). On March 16, 2009, Plaintiff appeared before ALJ Randolph Schum, with testimony being offered by Plaintiff and his grandmother. (Tr. 25-50). In a written decision dated June 2, 2009, the ALJ determined that Plaintiff was not disabled as defined by the Act. (Tr. 8-19). The Appeals Council declined to review this determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g).

## ANALYSIS OF THE ALJ'S DECISION

**A. Applicable Standards**

Federal law provides that an "individual under the age of 18" will be considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child

satisfies this standard, the Commissioner must evaluate the claim pursuant to a three-step sequential process. 20 C.F.R. § 416.924.

In the first step, if the ALJ determines that the child is engaged in substantial gainful activity he cannot be found to be disabled. 20 C.F.R. § 416.924(b); *Elam v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003). If the child is not engaged in substantial gainful activity the analysis proceeds to step two, at which point the ALJ must determine whether the child has a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c); *Elam*, 348 F.3d at 125. If the ALJ determines that the child suffers from a severe impairment, or combination of impairments, the analysis proceeds to step three, at which point the ALJ must determine whether the impairment(s) "meet, medically equal, or functionally equal" one of the impairments identified in the Listing of Impairments. 20 C.F.R. § 416.924(d); *Elam*, 348 F.3d at 125.

## B. The ALJ's Decision

After noting that Plaintiff was not engaged in substantial gainful activity, the ALJ proceeded to the second step of the analysis, finding that Plaintiff suffered from: (1) post-traumatic stress disorder; (2) language delay; (3) depressive disorder; (4) encopresis;[1] and (5) separation anxiety disorder. (Tr. 11). At the third step of the analysis, the ALJ concluded that Plaintiff's impairments do not meet or medically equal any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 11). The ALJ further determined that

---

[1] Encopresis occurs when a child "resists having bowel movements, causing impacted stool to collect in the colon and rectum." *Encopresis*, available at http://www.mayoclinic.com/health/encopresis/DS00885 (last visited on Dec. 8, 2010). When the "child's colon is full of impacted stool, liquid stool can leak around the impacted stool and out of the anus." In "most cases," encopresis is "a symptom of chronic constipation," but "[l]ess frequently, it may be the result of developmental or emotional issues." Treatment for encopresis "is usually successful." *Id.*

Plaintiff's impairments do not functionally equal in severity any impairment identified in the Listing of Impairments. (Tr. 11-18).

To determine whether a child claimant suffers from an impairment which is the functional equivalent of a listed impairment, the ALJ must evaluate how the child functions in each of six domains of functioning described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(a)-(b). To be considered disabled the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains of functioning are:

> (i) acquiring and using information,
> (ii) attending and completing tasks,
> (iii) interacting and relating with others,
> (iv) moving about and manipulating objects,
> (v) caring for yourself, and
> (vi) health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

The ALJ found that Plaintiff experienced marked limitation in the realm of attending and completing tasks. (Tr. 14-15). The ALJ found that Plaintiff experienced less than marked limitation in the following areas: (a) acquiring and using information and (b) interacting and relating with others. (Tr. 14-16). Finally, the ALJ found that Plaintiff experienced no limitation in the following areas: (a) moving about and manipulating objects; (b) caring for yourself; and (c) health and physical well-being. (Tr. 16-18). Accordingly, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act.

In his appeal, Plaintiff asserts a single issue, namely that the ALJ erroneously assessed the extent to which he is impaired in the domain of interacting and relating with others. Specifically,

Plaintiff asserts that he suffers from an extreme limitation in this domain. Plaintiff further asserts, in the alternative, that he suffers from a marked limitation in this domain. The ALJ found that Plaintiff suffered from a less than marked limitation in this domain. As discussed below, this decision is supported by substantial evidence.

The domain of interacting and relating with others refers to how well the child initiates and sustains emotional connections with others, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). A school-aged child should "be able to develop more lasting friendships with children" his age. 20 C.F.R. § 416.926a(i)(2)(iv). The child "should begin to understand how to work in groups to create projects and solve problems." The child "should have an increasing ability to understand another's point of view and to tolerate differences" and be able to "share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." *Id.*

On April 28, 2005, Plaintiff began treatment with Dr. Ronald Van Valkenberg at Community Mental Health of Ottawa County (CMHOC). (Tr. 199-201). Plaintiff's grandmother reported that Plaintiff's mother was mentally ill and that, as a result, Plaintiff and his brother were living were her. (Tr. 200). Plaintiff's grandmother reported that Plaintiff "has a difficult time" if he is separated from her. (Tr. 200). She reported that Plaintiff's "major problem is stool withholding." (Tr. 200). The results of a mental status examination revealed that Plaintiff was "skilled at changing the topic to a less anxiety precipitating one," but the results of the examination were otherwise unremarkable. (Tr. 200). Plaintiff was diagnosed with (1) separation anxiety disorder; (2) encopresis; (3) post-traumatic stress disorder; (4) depressive disorder; (5) parent-child

6

relational problems; and (6) history of sexual abuse. (Tr. 201). Plaintiff was prescribed a stool softening medication. (Tr. 200-01).

CMHOC treatment notes dated June 9, 2005, indicate that Plaintiff has exhibited "an improvement in school behavior" and "is doing a number of activities that are exciting." (Tr. 197). Plaintiff was alert and oriented and his affect was appropriate. (Tr. 197). CMHOC treatment notes dated July 14, 2005, indicate that Plaintiff was presently attending camp which he was "clearly enjoying." (Tr. 195). CMHOC treatment notes dated August 25, 2005, indicate that Plaintiff "is a bit immature for his 6 ½ years," but "is responsive to the examiner and does make adequate eye contact." (Tr. 189). The examiner also reported that "[t]here is no sign of a psychotic process." (Tr. 189).

Following an October 13, 2005 examination at CMHOC, the examiner reported that Plaintiff is "active. . .alert and responsive." (Tr. 187). Plaintiff reported that "things are well in the second grade." (Tr. 187). The examiner noted that Plaintiff "has been using the bathroom for bowel movements about three times a week which is a vast improvement." (Tr. 187). The examiner reported that Plaintiff "did have an accident in school shortly after starting the classes as if testing to see what the teacher's response would be. She handled it beautifully and he has not done it since." (Tr. 187). The examiner noted that Plaintiff's current medication regimen was "effective." (Tr. 187). The examiner further noted that Plaintiff was alert, "relates well," and "enjoys my company." (Tr. 187).

CMHOC treatment notes dated December 8, 2005, indicate that Plaintiff "has been pooping daily." (Tr. 185). The examiner noted that Plaintiff was "excited about his accomplishments" and "is getting excellent support at school." (Tr. 185). CMHOC treatment notes

dated April 27, 2006, reveal that Plaintiff "still will go two or three days without a bowel movement," but "is no longer having accidents in school." (Tr. 181).

CMHOC treatment notes dated June 8, 2006, indicate that Plaintiff "is doing very well." (Tr. 242). The examiner observed that Plaintiff "shares actively" and "talks about the garden" and "talks about the hill to his cousin's house and riding his bike up it." (Tr. 242). The examiner further observed that Plaintiff was "alert, euthymic,[2] [and] oriented times three." (Tr. 242).

CMHOC treatment notes dated October 26, 2006, indicate that Plaintiff "is a good helper, friendly, playful and generous." (Tr. 231). The examiner observed that Plaintiff "likes sports, bike riding, swimming, and animals" and "share[s] games, animal care, swimming, [and] art" with his family. (Tr. 231). The examiner further observed that "after initial shyness," Plaintiff "can be generous, humorous, helpful, and understand and appreciate the needs and point of view of others." (Tr. 234). Plaintiff's grandmother reported that Plaintiff's encopresis was "now much less of a problem." (Tr. 234).

CMHOC treatment notes dated November 9, 2006, indicate that Plaintiff continues to take his medication and "is doing better both at home and at school." (Tr. 229).

CMHOC treatment notes dated February 8, 2007, indicate that Plaintiff "had problems with his stool withholding around the Christmas vacation but now has settled down into normal bowel movements." (Tr. 227). Plaintiff reported that "school is going well." (Tr. 227). The examiner reported that Plaintiff "is alert and oriented" and "when he settles in, and does not appear

---

[2] Euthymic describes a "normal mood in which the range of emotions is neither depressed nor highly elevated." *See* Euthymic, available at http://medical-dictionary.thefreedictionary.com/euthymic (last visited on December 16, 2010).

8

to be anxious and pressured, he really does very well." (Tr. 227). The examiner further observed that Plaintiff "is articulate, oriented, and interactive with me." (Tr. 227).

On June 14, 2007, Plaintiff's grandmother reported that Plaintiff was "doing quite well." (Tr. 223). She reported that Plaintiff "is making friends at school and is doing fairly well there." (Tr. 223). The examiner observed that Plaintiff was "alert, focused, euthymic, oriented times three" with "no sign of a thought disorder." (Tr. 223).

CMHOC treatment notes dated December 13, 2007, reveal that Plaintiff is "doing fairly well." (Tr. 217). Plaintiff's grandmother reported that Plaintiff was "doing somewhat better in school" and was "in the top 10 in the chess club." (Tr. 217). The examiner noted that Plaintiff was "conversant" and "proud of his chess accomplishments." (Tr. 217). The examiner also observed that Plaintiff was "more focused" and "more direct." (Tr. 217). Plaintiff reported that he was "doing better in school." (Tr. 217).

As noted above, the ALJ concluded that Plaintiff experiences less than marked limitation in the domain of interacting and relating with others, a conclusion with which Plaintiff takes issue. Specifically, Plaintiff asserts that he experiences a "marked" or "extreme" limitation in this domain.

A "marked" limitation is defined as one which "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). A claimant's "day-to-day functioning may be seriously limited when [his] impairment(s) limits only one activity or when the interactive and cumulative effects of [his] impairment(s) limit several activities." *Id.* An "extreme" limitation is defined as one which "interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). A claimant's

9

"day-to-day functioning may be very seriously limited when [his] impairment(s) limits only one activity or when the interactive and cumulative effects of [his] impairment(s) limit several activities." The designation of "extreme" is reserved for "the worst limitations," but an "extreme limitation does not necessarily mean a total lack or loss of ability to function." *Id.*

Plaintiff first asserts that due to the severity of his encopresis he is more limited in the domain of interacting and relating with others than recognized by the ALJ. The ALJ found that Plaintiff's encopresis constituted a severe impairment, but noted that the medical evidence "reflect[s] vast improvement in the claimant's ability to care for his own toileting needs." (Tr. 17). Plaintiff counters that "the Record is replete with examples that Claimant still has an ongoing issue with encopresis even though there has been some improvement in that condition." While Plaintiff asserts that "the Record is replete with examples" to support his position, he has failed to identify even one item of evidence in support thereof. On the other hand, the evidence discussed above amply supports the ALJ's conclusion in this regard.

Plaintiff next asserts that the ALJ failed to afford sufficient weight to the observations of Brad Oostindie and Lee Ingersoll. Oostindie met with Plaintiff on a single occasion. (Tr. 266-73). As the ALJ noted, Oostindie "did not assess the claimant's functioning," but instead simply attempted to "assess [Plaintiff's] learning style." (Tr. 13). While Oostindie concluded that Plaintiff suffered from (1) anxiety disorder, (2) reading disorder, and (3) processing speed issues, Oostindie's report is devoid of observations or conclusions that contradict the ALJ's finding that Plaintiff experiences less than marked limitation in the domain of interacting and relating with others.

Ingersoll, a social worker, completed a single report concerning Plaintiff's performance in school. (Tr. 117-20). Ingersoll reported that Plaintiff was engaging in inappropriate

behavior and experiencing difficulty interacting with his peers. Ingersoll's observations arguably contradict those of Dr. Van Valkenberg and the other professionals that treated Plaintiff at Community Mental Health of Ottawa County. However, as noted above, the ALJ is tasked with assessing and weighing the evidence before him. With respect to this issue, the ALJ concluded that "[a]fter assessing all of the documentary evidence and listening to the testimony at the hearing, I am most impressed by the detailed reports of psychiatrist Dr. Van Valkenberg, which show improvement over time in the claimant's overall condition." (Tr. 13). It was neither unreasonable nor improper for the ALJ to afford less weight to the observations of a social worker who completed a single report and afford greater weight to the observations of a psychiatrist that treated Plaintiff for more than two and one-half years.

In sum, the ALJ's conclusion that Plaintiff experiences less than marked limitation in the domain of interacting and relating with others is supported by substantial evidence.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C).

Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: January 11, 2011

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge